UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>Russel Hoggarth,<br><br>            Debtor.<br>_____/<br><br>Chad Schlechter,<br><br>            Plaintiff,<br><br>    vs.<br><br>Russel Hoggarth,<br><br>            Defendant.<br>_____/ | Bankruptcy No. 09-30390<br>Chapter 7<br><br><br><br><br><br><br><br>Adversary No. 09-7020 |

**MEMORANDUM AND ORDER**

By Complaint filed July 10, 2009, Plaintiff Chad Schlechter initiated this adversary proceeding seeking a determination that Defendant Russel Hoggarth's obligation to Plaintiff in the amount of $21,000.00, plus interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). Defendant filed an Answer on August 3, 2009, denying the allegations. The matter was tried on November 10, 2009. The parties were given until November 20, 2009, to submit briefs. Both parties submitted their respective briefs on said date.

**I. FACTUAL BACKGROUND**

Defendant was the sole owner of Wimbledon Implement Consignments until November 2007. Plaintiff is a farmer and owner of a fertilizer sales business, Agro-Culture Liquid Fertilizer, in South Dakota. Plaintiff met Defendant through a customer and mutual acquaintance in December 2005 when Plaintiff was seeking to purchase fertilizer tanks for his fertilizer sales business. The mutual acquaintance informed Plaintiff that Defendant had some tanks that Defendant could show Plaintiff if he was interested

in purchasing. Plaintiff testified that he assumed Defendant was the owner. Plaintiff testified he traveled with the mutual acquaintance to Jamestown to meet Defendant. Defendant denied that they met in Jamestown but rather, insisted the men met at his residence. Wherever they met, the parties agree they subsequently traveled together to Rogers to view a 200,000 gallon tank. The tank was sitting on blocks or stilts lifting it off the ground. Plaintiff testified that Defendant stated that he would need $25,000.00 for the 200,000 gallon tank. Plaintiff testified that Defendant stated Carrington Housemovers could move it off the site for approximately $10,000.00. After viewing the tank, Plaintiff told Defendant he would think about it.

While the men rode together, Defendant talked about four 20,000 gallon tanks in Grand Forks for sale. Defendant told Plaintiff that he had the inspections sheets for the tanks and described them as "good tanks." Defendant stated that he wanted $1,500.00 for each totaling $6,000 for all four tanks. Plaintiff again told Defendant he wanted to think about it. Plaintiff testified that Defendant never told Plaintiff that Defendant was not the owner of the tanks and that Defendant just stated he had four tanks in Grand Forks. Plaintiff testified that the three men drove back to Jamestown together, and then Plaintiff and the mutual acquaintance drove back to South Dakota.

Plaintiff testified that two or three days later, he informed Defendant on the telephone that he would buy the 200,000 gallon tank for $25,000.00 and the four tanks in Grand Forks for $6,000.00. Plaintiff sent two checks to Defendant, one in the amount of $25,000.00 and the other in the amount of $6,000.00. Both checks were payable to Wimbledon Implement Consignments, Defendant's business. Defendant deposited both checks, totaling $31,000.00, into his business account for Wimbledon Implement Consignments on December 21, 2005. Plaintiff testified that he believed he was buying the tanks from Defendant. Defendant sent two purchase orders to Plaintiff, one for the 200,000 gallon tank and the other

2

for the four tanks in Grand Forks.[1] The purchase orders reflect that Defendant's business, Wimbledon Implement Consignments, as the seller or supplier of the four tanks and Plaintiff as the buyer. The purchase orders also reflect that Plaintiff paid Defendant.

A.      Four Tanks in Grand Forks

After Plaintiff paid Defendant for the four tanks, Plaintiff testified that he then contacted his own customers regarding the possible sale of the tanks. One of his customers, Travis Madsen, was interested in purchasing the four Grand Forks tanks from Plaintiff. Madsen agreed to travel to Grand Forks to pick up the tanks. Madsen contacted Defendant by telephone to get the location of the tanks in Grand Forks and Defendant told Madsen the tanks were located at UAP Distribution (UAP). There was no discussion between Defendant and Madsen relating to ownership of the tanks. Madsen testified that he thought he was buying the tanks from Plaintiff.

Madsen also called a crane company to get a recommendation on a crane to remove the tanks. The crane company stated it could not get the tanks out of the UAP yard at that time because the site was muddy and full of snow. When the weather improved and it was possible for the cranes to get in the yard, Madsen called UAP. An employee of UAP informed Madsen that the tanks were not going to be moved off the site because they had not been paid for. Further, the employee stated that unless the tanks were paid for that day, the employee was going to sell the tanks to a local farmer that same day. Madsen paid UAP for the four tanks tanks on May 16, 2006. Madsen also purchased two additional tanks for $500.00 each. Madsen gave a check to UAP for $7,000.00 for all six tanks.

Madsen testified that he called Plaintiff after paying for the tanks and Plaintiff was upset that the tanks had not been paid for by Defendant. The parties agree that Defendant did not return the $6,000.00

---

[1] The Court notes that the purchase order for the 200,000 gallon tank reflects a purchase price of $20,000.00, although the parties agree Plaintiff's purchase price for the tank was $25,000.00, and Plaintiff paid Defendant $25,000.00.

he received from Plaintiff for payment of the four tanks.

Defendant testified that he did not pay UAP for the tanks because he started to receive repeated phone calls from UAP threatening that if the tanks were not moved, UAP would start charging Defendant rent. Defendant stated he did not want to be responsible for the rent so he did not pay for the tanks. Defendant testified, "Why would I pay for something when I was getting all those threats?" Defendant did not inform UAP that he had a purchase agreement with Plaintiff but testified that "they knew it."

B.	200,000 Gallon Tank

Antone Jochim, the manager of Archer Midland Company (ADM), testified that ADM encountered contamination on its Rogers site and had to move two tanks that it owned. Carrington House Moving, Inc. (Carrington Moving) put the tanks on stilts in order to move them. Once the tanks were moved, ADM decided to sell one of the 200,000 gallon tanks, and ADM requested that Carrington Moving leave the tank on stilts until it sold. Jochim testified that Carrington Moving charged ADM $4,000.00 to leave the tank up on stilts until they could sell it. Jochim testified Defendant came into ADM and inquired whether the tank was for sale, and Defendant bought the 200,000 gallon tank for $20,000.00 on December 20, 2005.

After Plaintiff paid Defendant for the 200,000 gallon tank, Plaintiff spoke with Carrington Moving and learned it would cost more than $35,000.00 to move the tank. Plaintiff contacted Defendant and stated he could not afford to move the tank and asked Defendant to act as a broker or agent and find a buyer for Plaintiff. Defendant agreed and contacted ADM. Defendant testified that he made several attempts to have ADM purchase the tank back for $20,000.00, the amount ADM originally sold it to Defendant for. ADM agreed to purchase it back for $10,000.00.

Jochim testified that when ADM agreed to purchase the tank back, Defendant asked ADM to give him a check made payable to Defendant's business for $10,000.00. Further, Defendant did not inform ADM at any time that he was there to sell it for anyone else. Defendant picked up the check and deposited

4

it into his business account. It is undisputed that Defendant did not pay Plaintiff $10,000.00. Jochim testified that he received a phone call from Plaintiff some time later and Plaintiff was unhappy because he had not been paid. Until then, Jochim did not know Plaintiff was involved with the initial purchase or the resale of the tank.

C.      $5,000.00 Payment

Plaintiff testified that he spoke with Defendant regarding Defendant not paying UAP for the four tanks and not paying Plaintiff $10,000.00 when the 200,000 gallon tank was sold back to ADM. Plaintiff testified that Defendant agreed he would pay Plaintiff $5,000.00 from his commission when he initially sold the 200,000 gallon tank to Plaintiff if Plaintiff would not seek debt collection. Defendant testified that he never agreed to pay Plaintiff his $5,000.00 commission.

Defendant testified that when he owned Wimbledon Implement Consignments, he never bought anything up front. Instead, Defendant stated he acted as a consigner or broker and would sell the items before he actually owned it. Defendant testified that in his business he only collected a commission and was not entitled to any of the asking sale price. Defendant admitted that he did not tell Plaintiff who owned the tanks, but he also never told Plaintiff that he was the owner of any of the tanks and that Plaintiff "knew better."

In his Complaint, Plaintiff alleges in his first count that Defendant's obligation in the amount of $6,000.00 relating to four fertilizer tanks is nondischargeable pursuant to 11 U.S.C. § 523 (a)(2) and (6). In his second count, Plaintiff alleges that Defendant's obligation in the amount of $10,000.00 relating to the 200,000 gallon tank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Plaintiff alleges in his third count that Defendant's obligation in the amount of $5,000.00 relating to Defendant's profit on the sale of the 200,000 gallon tank is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).

5

## II. CONCLUSIONS OF LAW

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. Owens v. Miller (In re Miller), 276 F.3d 424 (8th Cir. 2002). Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993). The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr. D.N.D. 1999). Where an objecting plaintiff fails to establish every element under section 523(a), the indebtedness at issue is dischargeable. Id.

Plaintiff alleges that all three counts in his complaint are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Section 523(a) of the Bankruptcy Code exempts certain debts from discharge in bankruptcy, including debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability under section 523(a)(2)(A), a creditor must prove by a preponderance of the evidence that:

(1) the debtor made a representation;
(2) at the time the representation was made the debtor knew it was false;
(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;
(4) the creditor justifiably relied on the representation; and
(5) the creditor was damaged.

Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). Where an objecting party fails to establish every element of a section 523(a)(2)(A) action, the indebtedness at issue is dischargeable. Simek v. Erdman (In re Erdman), 236 B.R. 904, 910 (Bankr. D.N.D. 1999). Exceptions to discharge are narrowly construed against a creditor and liberally in favor of the debtor to effectuate

6

fresh start policy of the Bankruptcy Code. Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999).

A.      Four Tanks

   1.      Representation and Falsity

Section 523(a)(2)(A) includes both false representation, which is an express misrepresentation, and false pretense, which involves "an implied misrepresentation or conduct intended to create and foster a false impression." Finch v. Finch (In re Finch), 289 B.R. 638, 643 (Bankr. S.D. Ohio 2003); Rainer Title Co., Inc. v. Demarest (In re Demarest), 176 B.R. 917, 920 (Bankr. W.D.Wash. 1995). It is well settled that mere silence of a material fact can constitute a false representation and is actionable under section 523(a)(2)(A). Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987) (overturned on other grounds).

Regarding the first count relating to the $6,000.00 payment for the four tanks, there is no dispute that Defendant represented to Plaintiff that there were four tanks for sale in Grand Forks and that Defendant needed $6,000.00 in order to sell the tanks to Plaintiff. The parties agree that Defendant never informed Plaintiff that he was not the owner of the tanks and did not disclose the true owner. In this case, Defendant's silence created a false impression that Defendant was the owner of the tanks. Plaintiff paid Defendant for the tanks on December 15, 2005, based upon this representation. Following payment, Defendant completed a purchase order for the four tanks. The purchase order reflects that Defendant's business, Wimbledon Implement Consignments, as the seller or supplier of the four tanks and Plaintiff as the buyer. The purchase order also reflects that Plaintiff paid Defendant. The purchase order further evidences this representation by the fact that nowhere on the purchase order does Defendant represent that anyone else is the owner of the tanks. Therefore, this Court finds Defendant represented that he had four tanks for sale and at the time of the representation, Defendant knew that he was not the owner of the tanks.

    2.      Intent to Deceive

Intent may be inferred from a debtor's actions at the time of and subsequent to the loss. In re Finch, 289 B.R. at 643. A court is to "consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive creditor." Crawford v. Monfort (In re Monfort), 276 B.R. 793, 796 (Bankr. N.D. Ohio 2001).

In this case, from the time that Defendant informed Plaintiff of the four tanks for sale, Defendant gave no indication that the tanks were owned by anyone else. When the parties agreed on the sale and Plaintiff paid Defendant, Defendant still gave no indication that he was not the owner of the tanks. Further, Defendant prepared a purchase order reflecting his business as the seller of the four tanks. It was not until five months later, May 16, 2006, when Madsen learned that Defendant had not paid for the tanks, that Plaintiff became aware of the fact that Defendant did not own the tanks and that the true owner had not been paid. The evidence demonstrates that Defendant subjectively intended to deceive Plaintiff at the time he represented that he owned the tanks.

    3.      Reliance

As to the element of reliance, it is clear Plaintiff relied on Defendant's representation that he had tanks for sale by the evidence that Plaintiff paid Defendant $6,000.00 for the tanks. The evidence also demonstrates that Plaintiff justifiably relied on Defendant's purchase order stating that Plaintiff had purchased the tanks from Defendant when Plaintiff contacted his own customers to resell the tanks.

    4.      Loss

Defendant kept Plaintiff's $6,000.00 payment for the four tanks. Therefore, the Plaintiff has proven that he has sustained a loss and was damaged relating to Count 1.

B.      200,000 gallon tank

Regarding Count 2 relating to the 200,000 gallon tank, Defendant does not dispute that he made representations to Plaintiff that he would act as a broker and sell the 200,000 gallon tank for Plaintiff. Defendant does not dispute that he secured a buyer for Plaintiff and tank was sold back to ADM for $10,000.00. At no time during the negotiations with ADM did Defendant inform ADM that he was acting on behalf of Plaintiff. Again, Defendant's silence gave a false impression and a false representation.

As to the element of intent to deceive, from the time Plaintiff originally purchased the 200,000 gallon tank until Plaintiff asked Defendant to act as a broker and find a buyer for the tank, Defendant never told ADM that any other party was involved. Further, Defendant requested that ADM make the check payable to Defendant's business. Defendant endorsed the check and deposited it into his own business account without ever making payment to Plaintiff. The evidence demonstrates that Defendant intended to deceive Plaintiff.

As to the element of reliance, the evidence discussed above demonstrates that Plaintiff relied on Defendant's representation that he would sell the tank on Plaintiff's behalf.

The evidence demonstrates that Defendant received a check for $10,000.00 for payment when Defendant sold Plaintiff's tank. Defendant did not pay Plaintiff and Plaintiff sustained a $10,000.00 loss.

C.      $5,000.00 payment

Plaintiff testified that Defendant agreed to pay Plaintiff the $5,000.00 he made in commission when Defendant originally sold the 200,000 gallon tank to Plaintiff in exchange for Plaintiff agreeing not to pursue collections of the $6,000.00 or the $10,000.00 debt. Defendant denies that he agreed to those terms. The evidence demonstrates, however, that Defendant has made numerous false representations respecting his dealings with Plaintiff and the Court finds Plaintiff's testimony credible as to the $5,000.00. The Court

9

further finds that Defendant intended to deceive Plaintiff by agreeing to pay $5,000.00 in order to delay Plaintiff's pursuit of collections, and Plaintiff relied on Defendant's representation that Defendant would compensate Plaintiff $5,000.00. Finally, Defendant failed to pay Plaintiff $5,000.00 for not pursuing collection, and Plaintiff therefore sustained a loss.

Based on the foregoing, Plaintiff proved his claims under section 523(a)(2) by a preponderance of the evidence. The Court therefore need not determine if Plaintiff's first count also succeeds under 523(a)(6) or if Plaintiff's second count succeeds under section 523(a)(4) and (6). The debts owed by Defendant Russel Hoggarth to Plaintiff Chad Schlechter in the total amount of $21,000.00, plus interest are nondischargeable pursuant to 11 U.S.C. § 523(a)(2). The Court has considered the parties' requests to be awarded its costs and attorney fees and denies the same.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this December 15, 2009.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**